JACK E. RINKER, ET AL.

V.

CITY OF FAIRFAX, ET AL.

Record No. 870500

June 9, 1989

Present: All the Justices

*Sally Ann Hostetler (Dexter S. Odin; Odin, Feldman & Pittleman, P.C.,* on briefs), for appellants.
*Leslie M. Alden (William F. Roeder, Jr.; Verner, Liipfert, Bernhard, McPherson & Hand, Chartered,* on brief), for appellees.

Justice Compton delivered the opinion of the Court.

In this land use controversy involving conditional zoning, we decide whether the trial court correctly sustained a local governing body's demurrer and properly ruled that a landowner had failed to exhaust administrative remedies before mounting a judicial attack on the validity of zoning legislation.

Appellants Jack E. Rinker and David E. Feldman, trustees, and Judicial Drive Associates, a general partnership (collectively, the landowner), filed a bill of complaint for declaratory judgment and injunctive relief against appellees City of Fairfax, its Council, and its zoning administrator (collectively, the City), seeking an adjudication that the City's action on a rezoning application was invalid.

Ruling that the landowner had failed to exhaust its administrative remedies, the trial court sustained the City's demurrer, and we awarded the landowner this appeal.

At this stage of the proceeding, the facts are undisputed because the demurrer admits the truth of all material facts properly pleaded in the bill of complaint. In 1984, the landowner sought to rezone approximately one acre of land in the City of Fairfax from limited office use (C1-L) to general commercial office use (C-1). Upon receiving a negative response from the planning commission, the application was withdrawn. In 1985, the landowner resubmitted the application which initially included seven proffers.

Subsequent to the filing of the 1985 application, the City began discussing a comprehensive revision to its Zoning Ordinance. Thus, "in order to preserve [its] rights," the landowner amended its proffers in February 1986 to provide an eighth proffer that the original seven proffers would be null and void "if after the date of execution there is a comprehensive implementation of a new or substantially revised zoning ordinance."

On March 10, 1986, the planning commission voted to recommend approval of the landowner's rezoning application with certain modifications. The commission specifically rejected the condition set forth in the eighth proffer. On the next day, the City adopted an amendment to its Zoning Ordinance which substantially increased the use restrictions imposed on owners of commercial property.

In May 1986, the Council enacted Ordinance No. 1986-24, amending the Zoning Ordinance to reclassify the subject property to C-1 with the imposition of six conditions, as follows:

"1. The exterior of the office building and parking deck shall be brick and masonry.
2. All uses shall be restricted to those permitted by right in the C1-L District.
3. The height of the parking lot lighting fixtures shall not exceed fifteen (15) feet, with light directed downward and inward to the site.
4. At the time of development, a ten (10) foot wide dedication and construction of curb, gutter, sidewalk and road widening shall be provided across the full frontage of Judicial Drive.
5. The height of the building shall not exceed 48 feet.

6. The Owners and/or their successors agree not to apply to the Board of Zoning Appeals or other public authorities for waivers or variances from the provisions of these proffers."

Some of the foregoing conditions were the subject of the landowner's initial proffers.

Ordinance No. 1986-24 implied that these "reasonable conditions" had been proffered voluntarily by the landowner. But the landowner alleged, and the City has admitted for purposes of demurrer, that the proffers, in accordance with the eighth proffer, had been withdrawn when the comprehensive revision to the Zoning Ordinance occurred. Thus, the proffers were ineffective prior to the City's legislative act imposing conditions, thereby making the City's conditions involuntary and unlawful.

In the prayer for relief set forth in the bill of complaint, the landowner asked the court to enter a decree declaring the City's action to be null and void as confiscatory, arbitrary, unreasonable, discriminatory, illegal, ultra vires, and unconstitutional. The landowner also sought a declaration that the lawful zoning on the subject property is C-1 and that it has a right to use the property in accordance with the C-1 zoning classification existing prior to March 11, 1986, the date of the comprehensive revision to the City's Zoning Ordinance.

Although the City assigned several grounds for its demurrer, the trial court ruled on the exhaustion issue only. The trial court interpreted the "gravamen" of the declaratory judgment action to be a claim that the amended City Zoning Ordinance was invalid as applied to the property. The landowner argued to the trial court, however, that the "gravamen of the lawsuit was that the six conditions imposed in the ordinance were not voluntary." Because of the view we take of the case, we will not have to resolve the doubt about the actual basis of the landowner's claim.

On appeal, the landowner states that it seeks redress from unconstitutional legislation which illegally restricts the landowner's use of its property. The landowner asserts that the trial court erred when it refused to entertain the lawsuit and, in effect, told the landowner to seek a legislative amendment to the challenged legislation before the court would review the matter.

Specifically, the landowner argues, it was told to seek amendment to the proffers or a special exception, both legislative acts

and neither calculated to give it the relief it seeks before the court. The landowner says that, in so ruling, the trial court has allowed the City to impose involuntary conditions on it, to impose some but not all of its original proffers that were subsequently withdrawn, and is requiring it to seek a legislative remedy to obtain relief to which the landowner is entitled as a matter of right.

The City contends that a landowner must avail itself of available remedies before asking a court to declare a zoning ordinance unconstitutional as applied. The City says that its zoning ordinances can provide this landowner with an adequate remedy. Specifically, the City points to several provisions of its ordinances which provide procedures to seek modification of proffers 2 and 5. The City suggests that a special use permit can afford a remedy for the limitation on use of the property set forth in proffer 2. Also, the City points out, the landowner can seek a special exception to any of the limitations governing the C-1 district, including the building height limitation set out in proffer 5. "It is clear," the City argues, "that there are at least two procedures available to the [landowner] to relieve itself of at least two of the conditions on the use of its property," and that the landowner may then be satisfied with any remaining conditions. Continuing, the City argues that until the landowner has availed itself of those remedies by stating its demands regarding the use of the property and giving the City an opportunity to accommodate those demands, "the precise limitations on the use of the property are unknown" and, thus, it is uncertain whether any constitutional issues will arise. We disagree with the City.

This case presents a mix of Virginia's conditional zoning procedure with the employment of the special use permit, or the special exception, to modify zoning requirements, as both of these subjects relate to the exhaustion doctrine.

As pertinent to this case, the doctrine provides that when a landowner claims a "zoning ordinance is invalid as applied to his specific property, he must exhaust adequate and available administrative remedies before proceeding by declaratory judgment to make a direct judicial attack on the applied constitutionality of the ordinance." *Gayton Triangle Land Co.* v. *Henrico County*, 216 Va. 764, 766, 222 S.E.2d 570, 572 (1976). Courts will not anticipate circumstances which may never materialize in order to decide a constitutional question. Thus, if a landowner can be granted some modification to the requirements of a zoning ordi-

nance which will enable the subject property to be used reasonably, the landowner would not be prejudiced by the ordinance and thus would have no standing to attack it in court. Therefore, until a landowner has exhausted adequate and available administrative remedies, a court cannot determine whether it will be necessary to consider the applied constitutionality of the ordinance in question. *Id.* at 767, 222 S.E.2d at 572. But, the doctrine is inapplicable here.

On the subject of conditional zoning, Code § 15.1-491(a) permits such zoning in the City of Fairfax. And, Code §§ 15.1-491.1 to -491.6 contain general enabling legislation permitting conditional zoning throughout the Commonwealth.

Section 15.1-491(a) provides for adoption as a part of an amendment to the zoning map "reasonable conditions, in addition to the regulations provided for the zoning district by the ordinance, when such conditions shall have been proffered in writing . . . by the owner of the property which is the subject of the proposed zoning map amendment." The statute further provides that:

"Once proffered and accepted as part of an amendment to the zoning ordinance, such conditions shall continue in full force and effect until a subsequent amendment changes the zoning on the property covered by such conditions; provided, however, that such conditions shall continue if the subsequent amendment is part of a comprehensive implementation of a new or substantially revised zoning ordinance."

The statute contemplates that the proffers shall be voluntary. Section 15.1-491.2 explicitly provides that proffers be "voluntary."

In the present case, given the state of the record created by the demurrer, the City imposed involuntary conditions on the landowner when the subject property was rezoned. The effect of the landowner's eighth proffer was to withdraw all its proffers. This resulted in a request for rezoning without proffers. Under the allegations of the bill of complaint, this was illegal action by the City and, on that ground alone, the landowner had standing to proceed directly to court to seek redress of this unlawful act. Otherwise, a local governing body could impose involuntary conditions and force the landowner to seek legislative review to repair those

illegal conditions, a situation inimical to the orderly process of zoning.*

■ The foregoing ruling, however, answers only a part of the problem in this case because it impacts only the validity of Ordinance No. 1986-24 and its proffers. We must also address the validity .of the comprehensive revision of the City's Zoning Ordinance and the subject of the "administrative remedies" urged by the City (application for either a special exception or a special use permit, or modification of the six unwanted use conditions). We conclude that the landowner was not required to employ those procedures under these circumstances before proceeding to court.

■ The terms "special exception" and "special use permit" are interchangeable. *Fairfax County* v. *Southland Corp.*, 224 Va. 514, 521-22, 297 S.E.2d 718, 721-22 (1982). "The decision to grant or deny a special use permit is a legislative, not an administrative function." *National Memorial Park* v. *Board of Zoning Appeals*, 232 Va. 89, 92, 348 S.E.2d 248, 249 (1986); *Chesterfield Civic Assoc.* v. *Chesterfield County*, 215 Va. 399, 401-02, 209 S.E.2d 925, 927 (1974). In fact, the Fairfax City Code, §§ 26-167(a) and -168(f), requires the city council, the legislative body, to issue special use permits and special exceptions. Likewise, modification of unwanted use conditions is a function discharged by the local legislative body.

■ The landowner in this case has fully run the legislative gauntlet once, and in the midst of the process there was a comprehensive revision of the City's Zoning Ordinance. Under those circumstances, however, the owner is not required to resort to the legislative process a second time before being permitted to challenge the restrictions being placed on the use of its property, especially when it sought to protect itself against the adverse effect of the anticipated revision.

This case is unlike *Board of Supervisors* v. *Market Inns, Inc.*, 228 Va. 82, 319 S.E.2d 737 (1984), relied upon by the City. According to the City, we decided in *Market Inns* that certain legislative acts can be treated as "administrative" for purposes of the exhaustion doctrine.

---

* The City argues that the landowner's proffers were not withdrawn from its application for rezoning. But this argument depends, in part, upon facts contrary to those alleged in the bill of complaint. The City's factual allegations will not be noticed because the case is before us on the City's demurrer.

There, the owner of a restaurant successfully attacked in the trial court a zoning restriction on hours of operation as unconstitutional. Reversing the trial court, we applied the exhaustion doctrine and said the landowner should have sought a "provisional use permit" from the local governing body before proceeding to court. *Id.* at 85-86, 319 S.E.2d at 739-40. In that case, however, the owner had not employed the legislative process at all before attacking the ordinance. Moreover, the question whether legislative acts may be "administrative" for purposes of the exhaustion doctrine was not an issue to be decided in that case.

Consequently, we hold that the trial court erred in sustaining the demurrer and incorrectly determined that the exhaustion doctrine applied. The judgment below will be reversed and the cause remanded for further proceedings on the bill of complaint.

*Reversed and remanded.*